IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:06-CV-314-D

| | |
|---|---|
| ROBERT L. MELVIN, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the Court on the parties' cross motions for judgment on the pleadings. Claimant Robert J. Melvin seeks judicial review of the Commissioner's denial of his application for Disability Insurance Benefits (DIB). After a thorough review of the record and consideration of the briefs submitted by counsel, the Court recommends denying Claimant's Motion for Judgment on the Pleadings [DE-6], and granting Defendant's Motion for Judgment on the Pleadings [DE-12].

## STATEMENT OF THE CASE

On February 27, 2003, Claimant filed an application for DIB.[1] He claimed that he became disabled as of 10 November 1998 due to back problems, breathing problems, high blood pressure, post-traumatic stress disorder (PTSD), diabetes, depression, pain, and limited mobility. Claimant's application was denied initially and upon reconsideration.

---

[1] Claimant has filed three prior applications for DIB. Claimant filed his first application on January 9, 1997, alleging a disability onset date of November 28, 1994. That claim was denied initially and on reconsideration. Claimant then filed a second application on December 6, 1999, alleging a disability onset date of January 1, 1997. The second claim was denied initially, on reconsideration, and following a hearing by an administrative law judge. Claimant filed a third application on November 5, 2001, alleging a disability onset date of March 10, 1998. The third claim was denied initially and on reconsideration. (R. 18).

Claimant then requested a hearing before an Administrative Law Judge ("ALJ"), which took place on April 22, 2005. After the hearing, on May 20, 2005, the ALJ issued a decision denying the plaintiff's claims. The Appeals Council denied Claimant's request for review on July 28, 2006, rendering the ALJ's decision a "final decision" for purposes of judicial review. See Walls v. Barnhart, 296 F.3d 287, 289 (4th Cir. 2002) (noting that when the Appeals Council denies a request for review, the underlying decision by the ALJ becomes the agency's final decision for purposes of appeal). Claimant timely commenced the instant action pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I. The Standard of Review and Social Security Framework

The scope of judicial review of a final decision regarding disability benefits under the Social Security Act, 42 U.S.C. § 405(g), is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. See Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987); see also 42 U.S.C. § 405(g) (2006). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

This Court must not weigh the evidence, as it lacks the authority to substitute its judgment for that of the Commissioner. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Thus, in determining whether substantial evidence supports the

2

Commissioner's decision, the Court's review is limited to whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his or her findings and rationale in crediting the evidence. See Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439-40 (4th Cir. 1997).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process to be followed in a disability case. See 20 C.F.R. §§ 404.1520 and 416.920. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. If the claimant is not engaged in substantial gainful activity, then at step two the ALJ determines whether the claimant has a severe impairment or combination of impairments which significantly limit him or her from performing basic work activities. If no severe impairment is found, the claim is denied. If the claimant has a severe impairment, at step three the ALJ determines whether the claimant's impairment meets or equals the requirements of one of the Listings of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. If the impairment meets or equals a Listing, the person is disabled per se.

If the impairment does not meet or equal a Listing, at step four the claimant's residual functional capacity (RFC) is assessed to determine if the claimant can perform his or her past work despite the impairment; if so, the claim is denied. However, if the claimant cannot perform his or her past relevant work, at step five the burden shifts to the Commissioner to show that the claimant, based on his or her age, education, work experience and RFC, can perform other substantial gainful work. The Commissioner often

3

attempts to carry its burden through the testimony of a vocational expert (VE), who testifies as to jobs available in the economy based on the characteristics of the claimant.

In this case, Claimant alleges in his brief that the ALJ erred by: (1) failing to discuss the weight given to certain medical evidence or the reason for allocating weight to certain evidence, and (2) failing to make a function-by-function assessment of Claimant's abilities. It is the opinion of this Court that the ALJ did not err.

## II. The ALJ's Findings

In making the decision in this case, the ALJ proceeded through the five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920, and found that Claimant had not engaged in substantial gainful activity at any time relevant to the ALJ's decision. (R. 19). Then, the ALJ proceeded to step two to determine whether Claimant had a "severe" impairment or combination of impairments which significantly limited him from performing basic work activities. See 20 C.F.R. §§ 404.1520(b) and 416.920(b). The ALJ found that Claimant suffered from the severe impairments of mild lumbosacral disc disease/myofascial pain syndrome, mild chronic obstructive pulmonary disease, depression, and history of substance abuse. (R. 20). However, at step three the ALJ determined that Claimant's impairments were not severe enough to meet or medically equal one of the impairments listed in 20 C.F.R. § 404, Subpart P, App. 1. (R. 20). Next, the ALJ determined Claimant's RFC by considering all of his subjective complaints and reviewing his medical records, and concluded that he had the ability to perform a wide range of light work activity. (R. 24). At step four, the ALJ found that Claimant had past relevant work experience as a cook. (R. 25). At step five, the ALJ determined that

4

Claimant could perform the work of a bench assembler, hand packer, and inspector. (R. 26). As a result, the ALJ found that Claimant was not under a "disability," as defined in the Social Security Act, at any time prior to 31 December 2002, Claimant's date last insured. (Id.).

## III. Claimant's Testimony at the Administrative Hearing

Claimant testified at his administrative hearing. (R. 890-908). He was last employed in 1998 and he draws a pension from the Department of Veterans Affairs (VA) in the amount of approximately $2,500 per month based on a finding that he is 100 percent disabled. (R. 890). Claimant testified that his VA disability is based on his breathing difficulties, back injury, and depression. (Id.). Claimant completed high school and took some college classes. (R. 891). While in the military, from 1985 through 1991, he was a cook. (R. 890-91). In 1998 Claimant worked as a cook and a security guard. (R. 890). Claimant had some other intermittent work in the early 1990s with a fence and deck company. (R. 892). Claimant stated that he lives with his wife, who works during the day, and his daughter. (R. 892-93).

In 1997, Claimant testified that he was involved in a car accident, in which he sustained back and neck injuries. (R. 893). It was these injuries that caused Claimant to quit his job as a security guard in 1998. (Id.). Claimant now receives periodic injections into his back and takes Percocet for the pain, which has worsened in the past several years. (Id.). This back pain feels like a sharp pain that goes down his left leg and lasts for ten to fifteen minutes at a time. (R. 894). Pain medication helps with the pain, but does not completely alleviate it. (Id.). Sleeping with a heating pad also helps with the pain. (R.

895). Claimant testified that when he moves a lot during the day or "walks wrong" the pain increases. (Id.). Claimant's back pain prevents him from gardening and doing housework, and his brother often helps him with these chores. (R. 894). Claimant has not had any surgery on his back, although it has been considered. (Id.).

Claimant stated that he is able to walk only about fifteen feet before becoming short of breath. (R. 895). Claimant walks with a cane, which was prescribed for him in 2000 due to his right leg giving out and causing him to fall a number of times. (R. 896). Claimant has had shortness of breath since 1996. (Id.). He used to smoke, and had tried to quit on a number of occasions, but ultimately quit smoking in 2001. (Id.). Claimant takes nebulizer treatments each morning and has done so for the past year. (R. 897).

Claimant also testified about his problems with alcohol abuse, for which he has been hospitalized in the past. (R. 897). His most recent hospitalization was in July/August 2004, when he became depressed and started drinking heavily. (R. 898). Claimant was also hospitalized in 1998 due to alcohol abuse. (Id.). Claimant has now slowed his alcohol consumption, but he has not quit. (R. 899). His longest recent period of sobriety was following his detox in 1997, when he abstained for six months. (R. 900). Claimant testified that his alcohol use does not affect his breathing or back pain. (R. 901).

Claimant indicated that his most severe impairment is his breathing problem, followed by his back pain. (Id.). He is unable to sit for long periods of time due to his back pain and he often stands or lays down to help with the pain. (Id.). During the day, Claimant spends time walking, laying down, and sometimes sitting in the living room with his wife to discuss the mail when she comes home from work. (R. 902). Claimant's

6

brothers take turns visiting him for two or three hours each day and often take him on a car ride or to visit his aunt. (Id.). Claimant does not go to his friends' houses, but his friends do stop by to visit him. (R. 903).

Claimant enjoys cooking and tries to help his wife in the kitchen. (R. 903). He used to enjoy doing marital arts, but he stopped in 2000 due to his back pain and breathing problems. (R. 904). Claimant stated that he takes a nebulizer treatment every four hours and each treatment takes about fifteen minutes to complete. (R. 905). The treatment was prescribed by his doctor at the VA. (Id.). Since Claimant has stopped smoking, he has noticed some improvement in his breathing. (Id.). Claimant had bronchitis in 2003, for which he was admitted to the hospital. (R. 906). He currently takes medication for his depression and for his back pain he takes Percocet and has a TENS unit. (Id.). Claimant also uses a cream on his back. (R. 906-07). These medications help with the pain. (R. 907). Claimant has constant pain in his left leg, but does not have sharp pain unless he does something to irritate his leg. (Id.). His right leg gives out on him sometimes, which he thinks is because of his back problems. (Id.). Claimant has had an MRI of his back, which showed some bulging disks. (R. 908).

IV. **The Vocational Expert's Testimony at the Administrative Hearing**

Nancy Stewart testified as a VE at the administrative hearing. (R. 908-11). The VE classified Claimant's work as a military cook as medium, skilled work and his work as a short order cook at two fast food restaurants as light, semi-skilled work. (R. 908). Claimant did not work as a security guard long enough to have acquired any skills,

7

although the VE noted that is usually not a high-skilled job. (Id.). The ALJ then posed the following hypothetical:

> [t]here is a person who is 44, has a high school education, and has work history that you described. Assume the individual is restricted to light lifting of 10 to 20 pounds, 20 pounds occasionally, and should do only occasional climbing, balancing, and should not be exposed to high levels of dust, fumes, smoke, and the like or working at heights and around dangerous machinery. And also assume the individual has a history of cocaine and alcohol use and depression. He should not be in a job requiring firm production standards, frequent changes in work procedures, or interacting with the public constantly throughout the workday or even coworkers throughout the workday, but he can work among them. . . . With those limitations, would there be work that such a person could do, given the age, education, and work experience?

(R. 908-09). The VE responded in the affirmative. (R. 909). According to the VE, such an individual could perform the jobs of a bench assembler, with a Dictionary of Occupational Title (DOT) code of 706.684-022, a hand packer for some industries, such as shoe packer, with a DOT code of 920.687-166, and a production inspector, with a DOT code of 579.687-014. (R. 909-10). Those jobs mentioned by the VE existed in significant numbers in both the local and national economies. (Id.). Additionally, there were no conflicts between the VE's job data and the DOT. (R. 910).

The ALJ then posed a second hypothetical to the VE with the same characteristics as the first hypothetical claimant, however the second hypothetical claimant "could not sit continuously throughout the workday or be on his feet for the entire time but would have to change positions from sitting to standing and standing to sitting every hour or two for brief periods." (R. 910). The VE testified that the job of bench assembler would still exist, but in lower numbers in North Carolina. (Id.). However, if the VE considered all of

8

Claimant's testimony regarding his symptoms and limitations to be credible, there would not be any jobs in the local and national economies that Claimant could perform. (R. 911). Claimant was asked by the ALJ whether he thought he could perform any of the jobs cited by the VE. (Id.). Claimant responded that he did not think so because so many different things trigger his breathing difficulties and because he must use is portable inhaler every four hours. (Id.).

## V. Discussion of Certain Evidence

Plaintiff alleges that the ALJ erred by failing to discuss or evaluate certain medical and other opinion evidence. Specifically, plaintiff argues that the ALJ failed to discuss and allocate appropriate weight to the opinions of Syed H. Sajid, M.D., Charles D. Wallace, M.D., Edward Crane, Ed.D., the VA, and the previous ALJ. Plaintiff's arguments are unpersuasive.

### 1. Syed H. Sajid, M.D.

Claimant was hospitalized in July and August 2004 for depression. (R. 606-57, 898). During that hospitalization, Syed H. Sajid, M.D. was Claimant's attending physician. (R. 606). At the time of discharge, Dr. Sajid noted that Claimant's Global Adaptive Functioning (GAF) was 40.[2] (Id.). Plaintiff argues that it was error for the ALJ not to discuss Dr. Sajid's findings regarding his GAF score. The Court disagrees.

The ALJ is not required to discuss each and every piece of evidence in the record. E.g., Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005); Anderson v. Bowen, 868

---

[2] GAF scores are estimates of an individual's level of functioning. (R. 22). A GAF score of 41-50 indicates serious symptoms, a score of 51-60 indicates moderate symptoms, and a score of 61-70 indicates some mild symptoms. (Id.).

9

F.2d 921, 924 (7th Cir. 1989). Claimant was only insured for DIB through December 31, 2002, meaning that to receive DIB, he must show that he became disabled on or before that date. (R. 19). There is no indication that Claimant's condition in August 2004 had any bearing on whether he was disabled during the relevant time period—nearly two years prior. Accordingly, the ALJ did not err in failing to discuss Dr. Sajid's opinion.

### 2. Charles D. Wallace, M.D.

During January 2003 Claimant was hospitalized on two different occasions, both times for depression and mental health problems. (R. 463-500, 515-47). Claimant's attending physician during both of these hospitalizations was Charles D. Wallace, M.D. Dr. Wallace, a psychiatrist, noted that on discharge Claimant's GAF was 30 on both occasions. (R. 463, 515). During these hospitalizations, Claimant admitted both alcohol and cocaine abuse and stated that he wanted long-term substance abuse treatment. (Id.).

From documentation of these hospitalizations, it appears that much of Claimant's mental health problems are triggered by his substance abuse. Where alcohol and/or drug addiction is a contributing factor material to the determination of disability, and the claimant would not be disabled but for the drug addiction or alcoholism, then the claimant is not entitled to disability benefits. See 42 U.S.C. § 423(d)(2)(C). The ALJ specifically mentioned these hospitalizations in his decision. (R. 22, 24). However, the ALJ also noted that Claimant's GAF score of 30 was "most likely affected by his drug/alcohol abuse." (R. 22). Additionally, that ALJ pointed out that Claimant has not produced any documentation regarding other mental health or psychiatric treatment. (Id.). Based on

10

these factors, the ALJ accorded little weight to this GAF score. (Id.). Accordingly, the record indicates that the ALJ properly discussed the opinion of Dr. Wallace and gave it appropriate weight.

3. **Edward Crane, Ed.D.**

Claimant contends that the ALJ also erred in failing to discuss and give appropriate weight to the opinion of Edward Crane, Ed.D., a state agency consultant. Dr. Crane evaluated Claimant in person on 29 December 2001. (R. 452). In his report, Dr. Crane noted that Claimant had a GAF score of 50; however he also stated that "claimant can do simple, routine, repetitive tasks. . . [and] maintain concentration, persistence, and pace." (R. 454). Dr. Crane did opine that Claimant would have difficulty interacting with others. (Id.).

Contrary to Claimant's assertion, although the ALJ did not mention Dr. Crane by name, he did discuss his GAF score and cite to Dr. Crane's report in his decision. (R. 22). The ALJ noted that a GAF score of 50 is "only one point from falling in the moderate range." (Id.). Also, as previously discussed, the ALJ found that drug and alcohol abuse likely contributed to the low score. (Id.). When Claimant's substance abuse problems were under control, his GAF score was 65; a score that was estimated by Claimant's treating psychiatrist, Prasanthi Myneni, M.D., on May 13, 2002. (R. 22, 279); see Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006) (noting that an ALJ should accord greater weight to a treating physician's opinion because the treating physician has developed a treatment relationship with the claimant). The Court notes, however, that the ALJ did give some weight to Dr. Crane's opinion by imposing a restriction on Claimant's interaction with

11

co-workers and the public in the RFC. (R. 24). Accordingly, the ALJ gave appropriate weight to the opinion of Dr. Crane and his assessment of Claimant's functional capabilities.

### 4. Department of Veterans Affairs Decision

Claimant next argues that the ALJ failed to consider and give appropriate weight to the disability determination made by the VA that claimant was unemployable. The Court disagrees.

Social Security Ruling 06-3p, which was adopted approximately two years following the ALJ's decision, provides guidance for dealing with the disability decisions of other agencies. 71 Fed. Reg 45593 (Aug. 9, 2006). The ruling states that the ALJ must consider other agencies' disability decisions, although they are not binding. Id. at 45596. Further, the ALJ should explain the consideration given to the other decisions. Id. at 45597. Case law in our circuit similarly holds that the ALJ must consider the disability decisions of other agencies. Hicks v. Gardner, 393 F.2d 299, 302 (4th Cir. 1968), Hayes v. Barnhart, 4:05CV43, 2006 U.S. Dist. LEXIS 14823, at *8 (W.D. Va. March 20, 2006).

The disability determination made by the VA was part of the record before the ALJ, and the ALJ noted its existence and consideration of it in his decision. (R. 23, 24). Specifically, the ALJ discussed the determination by the VA on January 21, 2003 that states that Claimant is "not employable." (R. 23, 255). The ALJ chose not to rely on this statement because it was unclear who made the statement. An unintelligible signature is in the block marked, "PHYSICIAN/DENTIST/NURSE PRACTITIONER" with no abbreviations or notations such as "M.D." (R. 255). However, most importantly, the ALJ found that the VA's determination was not supported by the other objective medical

12

evidence in the record. (R. 23). The ALJ noted that in May 2002, Claimant told his treating physician that he was still gardening and doing some marital arts. (R. 23, 281). Accordingly, the ALJ appropriately considered and discussed the VA's disability determination.

5. **Previous ALJ Decision Dated August 20, 2001**

As previously noted, Claimant has filed four applications for DIB. After Claimant's second application was denied initially and upon reconsideration, he had a hearing before an ALJ. On August 20, 2001, the ALJ found that Claimant was not entitled to benefits. Claimant contends that the current ALJ who reviewed Claimant's fourth application for DIB erred by failing to discuss the prior ALJ's decision and allocate weight to it.

Claimant relies primarily on the Social Security Administration's (SSA) Hearing, Appeals, and Litigation Manual (HALLEX), as well as the Fourth Circuit's decision in Albright v. Comm'r of the Soc. Sec. Admin., 174 F.3d 473 (4th Cir. 1999) and the subsequent Acquiescence Ruling (AR) 00-1(4) to support his argument. A bit of history is helpful to understanding claimant's arguments. Prior to Albright, the SSA, in an attempt to interpret the Fourth Circuit's holding in Lively v. Sec'y of Health & Human Serv., 820 F.2d 1391 (4th Cir. 1987), had enacted AR 94-2(4), which addressed situations where a Claimant had filed multiple applications for Social Security benefits for identical conditions under the same title of the Social Security Act. In that situation, an ALJ was required, absent new and material evidence, to adopt the findings made by a prior ALJ during the sequential evaluation process. AR 94-2(4). The court in Albright found that AR 94-2(4) was not an accurate statement of the holding in Lively and that the rule set forth in AR 94-

13

2(4) could not be applied that broadly in every case. 174 F.3d at 478. In response to Albright, the SSA enacted AR 00-1(4). That Ruling indicates that the ALJ is no longer required to adopt any finding of a prior ALJ, but must merely consider such prior findings and give them appropriate weight on a case-by-case basis. AR 00-1(4). On December 19, 2002, the SSA issued section I-5-4-66 in their HALLEX to implement AR 00-1(4). This section of the HALLEX requires the ALJ to not only consider the findings of any prior ALJ and accord them appropriate weight, but also to document this consideration with specific reference to AR 00-1(4). HALLEX 1-5-4-66.

The Fourth Circuit has not addressed the meaning and effect of the HALLEX. However, it has stated that Social Security Rulings, which are merely "interpretations by the Social Security Administration of the Social Security Act" are entitled to some deference but they "do not have the force of law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995). Similarly, the Court notes that HALLEX 1-5-4-66 and AR 00-1(4) are interpretations by the SSA of the Fourth Circuit's decision in Albright, and as such are not binding on this Court.

Here, the current ALJ did not specifically comment on the previous ALJ's findings as required by HALLEX 1-5-4-66; however, this Court declines to find that this omission is error which would require remand. The Albright court indicates that an ALJ should consider and evaluate the findings of any prior ALJ as they relate to the decisions before the current ALJ, but falls far short of requiring comment on those prior findings. 174 F.3d 477-78.

In the present case, the current ALJ noted in his written decision the previous ALJ's decision denying Claimant's request for DIB (R. 18) and mentioned it at the administrative hearing (R. 889). The ALJ also stated that he had "review[ed] all of the evidence of record" (R. 19), indicating that he did consider the previous ALJ's decision. Additionally, the current ALJ's decision appears to be consistent with the prior ALJ's decision. The prior ALJ found that Claimant had an RFC for medium work activity, which was not precluded by his past relevant work. (R. 42). Four years later, the current ALJ found that Claimant's impairments had worsened and he only had the RFC for light work activity which precluded him from performing his past relevant work. (R. 24). Accordingly, the current ALJ appropriately considered the findings of the prior ALJ and the current ALJ's decision is supported by substantial evidence.

## VI. Function by Function Assessment

Claimant argues that the ALJ erred by failing to make a function-by-function assessment of claimant's capabilities prior to determining his RFC, pursuant to Social Security Ruling (SSR) 96-8p. Specifically, Claimant alleges that the ALJ failed to assess his capability for standing, sitting, walking, pushing, and pulling. The Court disagrees.

Ruling 96-8p provides that an ALJ should perform a function-by-function assessment of a claimant's physical and mental capacities in determining whether the claimant can perform his past relevant work activity. The Ruling notes seven strength demands–sitting, standing, walking, lifting, carrying, pushing, and pulling–which must be considered and requires the ALJ to provide adequate support for his conclusions regarding

a claimant's abilities. As previously discussed, these rulings are entitled to some deference, but they are not binding on the Court. Pass, 65 F.3d at 1204 n. 3.

The ALJ considered Claimant's physical abilities. (R. 24). For example, he found that Claimant could lift and carry 20 pounds occasionally and 10 pounds frequently, could climb and balance occasionally, but could not be exposed to environmental extremes. (Id.). The ALJ also considered Claimant's mental abilities. (R. 22, 24). He noted that Claimant was limited to performing jobs that did not require frequent changes in work procedures, firm production requirements, or constant interaction with co-workers or the public. (R. 24). Only after that assessment did the ALJ conclude that Claimant could perform light work. (R. 25).

In determining Claimant's RFC, the ALJ considered:

> all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. § 404.1529 and Social Security Ruling 96-7p. The undersigned must also consider any medical opinions, which are statements from acceptable medical sources, which reflect judgments about the nature and severity of the impairments and resulting limitations.

(R. 23). In seven, single spaced pages, the ALJ considered Claimant's medical records, his subjective complaints, and his testimony at the hearing. (R. 19-25). After reviewing all of the evidence, the ALJ found that while Claimant's RFC did not allowed him to perform his past relevant work, he did have the capacity for a wide range of light work. (R. 25). In fact, the ALJ disagreed with the findings of the State Agency physicians, who opined that Claimant could perform medium work. (R. 24-25).

16

While the ALJ did not specifically mention the strength demands of standing, sitting, walking, pushing, and pulling in his RFC determination, there is sufficient evidence to conclude that he did consider those capabilities as required by SSR 96-8p. See Manring v. Barnhart, No. 2:05CV00058, 2007 U.S. Dist. LEXIS 5392, at *11-12 (W.D. Va. Jan. 25, 2007) (ALJ must consider all seven strength demands listed in SSR 96-8p, but need only discuss those for which a claimant is limited); Lawson v. Apfel, No. IP 99-1112-C H/G, 2000 U.S. Dist. LEXIS 7428, at *9-10 (S.D. Ind. May 25, 2000)(same). The ALJ noted Claimant's testimony that walking caused increased pain and that he could not sit for prolonged periods, although the ALJ did not find Claimant's testimony to be fully credible. (R. 23-24). Additionally, in the second hypothetical posed to the VE, the ALJ asked the VE whether jobs would be available for a claimant who needed to switch positions from standing to sitting and sitting to standing every hour or two (R. 910), indicating that the ALJ properly considered these strength demands. The evidence of record does not indicate that Claimant had any significant limitation with regard to pushing or pulling during the relevant time period. In fact, as the ALJ stated, Claimant's medical records indicate that in May 2002 he reported doing some marital arts and gardening in his leisure time, both of which might reasonably involve some pushing or pulling. (R. 23). Accordingly, the ALJ appropriately performed a function by function assessment and his findings are supported by substantial evidence.

## CONCLUSION

Accordingly, because there is substantial evidence to support the findings of the ALJ, the Court **RECOMMENDS** that Claimant's motion for judgment on the pleadings be

**DENIED** and defendant's motion for judgment on the pleadings be **GRANTED**. The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This 10th day of October, 2007.

DAVID W. DANIEL
United States Magistrate Judge